IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAO LEE YANG, INDIVIDUALLY, AND | § | |
| OBO, S.V. & T. V., MINORS; | § | |
|    *Plaintiffs,* | § | |
| | § | |
| VS. | § | Civil Action No. 4:18-CV-161 |
| | § | |
| TEICHMAN GROUP, LLC., *et al.,* | § | |
|    *Defendants.* | § | |

**PLAINTIFFS' RESPONSE TO**
**LIGHTERING'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This lawsuit arises out of a crane accident that killed two young men at the T&T owned facility in Galveston. The facility had been leased by Lightering, Inc. However, as part of the lease, a T&T crane operated by a T&T employee was provided to Lightering.[1] During the operations of September 20, 2017, the T&T crane toppled over onto Blake Carlisle and Tai Vong – killing them. Both men had been hired by Express Services, Inc. Mr. Vong had only worked at the site for the day prior to the accident and the day of the accident; in other words, less than two days. Both days of Mr. Vong's employment were spent loading and unloading the Cheramie vessel. Mr. Carlisle had worked longer, but it is not clear at this time what his previous work consisted of. The work occurring on September 19 and 20 was being directed by and overseen by the T&T crane operator using a T&T crane.[2] This T&T crane operator was assigning all the work, and the individuals conducting the work.[3] Mr. Vong and Mr. Carlisle were acting as

---

1 Ex. 2, Contract between T&T and Lightering.
2 Ex. 1, Declaration of Brihan Mathieu.
3 *Id.*

riggers for the crane operator.[4] As such, they received all their instruction from the crane operator and only the crane operator for both days of the work.[5] The crane operator had control over this work and was directing this work, including both riggers employed by Express Services, Inc.[6] Such is confirmed by eyewitness testimony from a member of the crew onboard the *Cheramie* vessel that witnessed the work and the accident.

## II. MOTION TO STRIKE/OBJECTIOS TO SUMMARY JUDGMENT EVIDENCE

In support of its motion, Defendant Lightering relies upon a declaration by a non-witness and several unauthenticated documents. Plaintiffs object to this evidence, and respectfully contend that such evidence should be struck as non-competent summary judgment evidence.

**(1)      The Declaration of Cameron Kehm is not based on his personal knowledge.**

The declaration of Cameron Kehm is deficient for several reasons. As an initial matter, Mr. Kehm was not present at the site of the accident for any of the work leading up to the accident, nor was he a witness to the accident. As this Court is well aware, pursuant to Fed.R.Civ.P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). The substance of an affidavit must demonstrate the affiant has personal knowledge of the facts contained therein. *Wojciechowski v. National Oilwell Varco, L.P.* 763 F. Supp. 2d 832, 849 (S.D. Tex. 2011). If the affidavit fails to meet any of the procedural requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit. *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir.1999) (superceded by statute on other grounds as noted in *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir.2002)). However,

---

4 Ex. 1, Declaration of Brihan Mathieu.
5 *Id.*
6 *Id.*

"[t]he rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." *Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.1980).

In the instant case, Mr. Kehm does not have the personal knowledge to provide admissible evidence about the events on the day of the accident or leading up to the accident – specifically, who was present, what they were doing, who was directing the decedents, who was supervising or monitoring them, what equipment they were using, who provided instructions or directions, and whether any problems or concerns were reported. Mr. Kehm was not present on the day before the incident or the day of the incident. Without being present, there is no way for Mr. Kehm to have personal knowledge of such information, other than hearsay. Mr. Kehm's own declaration confirms his non-involvement in that he states "Mario Ruiz, Sr., Mario Ruiz, Jr. were involved…no one else from Lightering was present at the T&T facility at the time of the accident."[7]

Accordingly, Plaintiffs respectfully request this court to strike paragraphs 6, 8, 9 (beginning with the sentence "Other than…"), 10, and 11 of Kehm's declaration. Each of these paragraphs is made without the declarant's personal knowledge of the facts. Necessarily, each of these statements are either speculation or hearsay. Either way, they are not admissible summary judgment evidence. Moreover, they are directly controverted by someone who was actually present.[8]

---

7 Declaration of Cameron Kehm, No.6.
8 Ex. 1, Declaration of Brihan Mathieu.

**(2) Exhibits B & C are not authenticated.**

Exhibits B and C are not properly authenticated pursuant to FRE 901, and neither are self authenticating pursuant to FRE 902. These exhibits should be struck.

### III. ARGUMENTS & AUTHORITIES

Lightering moved for summary judgment based on the doctrine of borrowed servant status. In *Ruiz v. Shell Oil Co*., 413 F.2d 310, 312–13 (5th Cir.1969), this court suggested nine factors to be evaluated in determining whether the borrowed employee doctrine applies:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation;
> (2) Whose work is being performed;
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer;
> (4) Did the employee acquiesce in the new work situation;
> (5) Did the original employer terminate his relationship with the employee;
> (6) Who furnished tools and place for performance;
> (7) Was the new employment over a considerable length of time;
> (8) Who had the right to discharge the employee; and,
> (9) Who had the obligation to pay the employee.

The district court decides the borrowed employee issue as a matter of law, *Gaudet v. Exxon Corp*., 562 F.2d 351, 357–58 (5th Cir.1977), and, if sufficient basic factual ingredients are undisputed, the court may grant summary judgment. *Id*. at 358–59. If a factual dispute exists, that dispute must be resolved before the court can make its legal determination. *Billizon v. Conoco, Inc*., 993 F.2d 104, 105 (5th Cir.1993). Based upon the evidence submitted by Plaintiffs, such a factual dispute has been established.

**(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation.**

Because Mr. Vong and Mr. Carlisle were employed for different lengths of time, each needs to be evaluated independently.

**(a) Tai Vong.**

Mr. Vong only worked a full day before he was killed on the second day of his employment. Accordingly, for the entirety Mr. Vong's employment with Express Services, he was acting as a rigger for T&T.[9] Mr. Vong was being supervised and directed by this T&T crane operator. For his less than two days of employment, Mr. Vong was assigned his work tasks by the T&T crane operator. More than this, the T&T crane operator supervised and monitored the work of Mr. Vong, while in progress and through completion. The crane operation was the only item of work that Mr. Vong participated in.[10]

Contrary to the declaration provided by Cameron Kehm, who was not even at the work site, there is competent, admissible summary judgment evidence that no instruction or direction or authoritative control came from Lightering to Mr. Vong.

**(b) Blake Carlisle.**

Blake Carlisle worked for Express Services for approximately a week or so longer than Mr. Vong. However, Lightering has not provided any information about what other work Mr. Carlisle was doing prior to the job in question. As such, based upon the information presently known, Plaintiff asserts the same arguments previously made for Mr. Vong.

**(2) Whose work is being performed.**

Pursuant to the agreement between Lightering and T&T, the crane and crane operator were supplied by T&T. T&T was assigned this work, was responsible for this work, and was independently paid for this work.[11] Both Mr. Vong and Mr. Carlisle were acting as riggers for the

---

9  Ex. 1, Declaration of Brihan Mathieu.
10  *Id.*
11  Ex. 2, Contract between Lightering and T&T, page 3.

crane operation – which was being led by T&T.[12]   As such, the work being performed belonged to T&T.

**(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer.**

An agreement exists between Lightering and Express Services.  However, The Fifth Circuit has held that a contract provision declaring that a plaintiff was not an employee of the alleged borrowing employer, when considered with other facts, can preclude summary judgment.  *West v. Kerr-McGee Corp.,* 765 F.2d 526, 531 (5th Cir.1985).  In the contract in question, it is clear that the Express Service employees (Vong and Carlisle) are to remain employees of Express Services.  Express states that "we hire associates as Express employees, and provide all wages, taxes, withholding…"[13]   Further, the contract states that Express "provide[s] insurance to cover Express associates Workers Compensation…coverage."[14]   It also remains in charge of firing its employees in that if Lightering is unhappy with the performance of an employee, then that is to be reported to Express and Express will replace the associate.[15]   These employees were to remain employed by Express per the contract.

**(4) Did the employee acquiesce in the new work situation.**

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown v. Union Oil Co. of Ca.*, 984 F.2d 674, 678 (5th Cir.1993)(citing *Melancon*, 834 F.2d at 1246). In *Brown*, the Fifth Circuit found one month was sufficient to show acquiescence. *Id*. The court wrote the plaintiff worked, slept, and ate in the defendant's field for a month before his accident. Id. In *Melancon*, the Fifth Circuit found that the plaintiff "clearly acquiesced in his new situation" because he was aware of the working conditions;

---

12  Ex. 1, Declaration of Brihan Mathieu.
13  Ex. 3, Express Services contract, paragraph 1.
14  Ex. 3, Express Services contract, paragraph 5.
15  Ex. 3, Express Services contract, paragraph 4.

he worked there for a number of years and "made no complaint regarding these conditions." *Melancon*, 834 F.2d at 1246. In *Fontenot v. Mobil Oil Exploration & Producing Southeast, Inc.*, the Fifth Circuit said that it considered the "acceptance of a job that regularly sent [the plaintiff] to temporary workplaces as acquiescence to each of those employment situations." *Fontenot*, 997 F.2d 881, 1993 WL 261096, at *3 (5th Cir.1993).

There is no competent summary judgment evidence on this issue; Cameron Kehm is not able to testify as to what "Decedents knew" or when they knew it. Moreover, Mr. Vong only worked at the site (and for Express Services in total) for two days. Mr. Carlisle worked for slightly longer, but less than one month. Accordingly, Plaintiffs respectfully suggest that not enough time had elapsed for either Mr. Vong or Mr. Carlisle to acquiesce to the working conditions.

**(5) Did the original employer terminate his relationship with the employee.**

There is no competent summary judgment evidence on this issue; Cameron Kehm is not able to testify as to whom from Express Services was at the site because he was not at the site during the relevant time period.

**(6) Who furnished tools and place for performance.**

Plaintiffs respectfully submits that T&T provided the tools for the rigging work that was to be done by Mr. Vong and Mr. Carlisle.[16] Per the contract between Lightering and T&T, a T&T crane was provided with a T&T crane operator. Those constitute the tools necessary to complete the job that Vong and Carlisle were assigned to.

---

16 Ex.1, Declaration of Brihan Mathieu.

**(7) Was the new employment over a considerable length of time.**

Mr. Vong and Mr. Carlisle were both short term employees. Accordingly, this factor is neutral.

**(8) Who had the right to discharge the employee.**

The contract provides that if Lightering was unhappy with an Express Services employee, Lightering could complain and the employee would be replaced.

**(9) Who had the obligation to pay the employee.**

The contract in question provides that a "monthly service charge" will be applied to Lightering. There is nothing in the contract that supports the assertions in Mr. Kehm's affidavit that Lightering indirectly paid Carlisle and Vong's wages by paying Express's invoices. In fact, the contract suggests that Express is paid through a monthly service charge and not from the approval of invoices (although the contract has been redacted such that a full reading of the contract is not possible). If anything, this factor is neutral.

## IV. CONCLUSION

Lightering failed to show there were no genuine disputes of material fact. A fact issue exists as to who controlled the work of Messrs. Vong and Carlisle. There are also fact issues as to how Express was getting paid, whose work was being performed, whose tools were being used, and whether the employees acquiesced to the situation (among other things) Lightering has not established that it is entitled to summary judgment. Its motion should be denied.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G.Buzbee*
    Anthony G. Buzbee
    State Bar No. 24001820
    Federal Bar No. 22679
    JPMorgan Chase Tower
    600 Travis, Suite 7300
    Houston, Texas 77002
    Tel:   (713) 223-5393
    Fax: (713) 223-5909
    Email: tbuzbee@txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**
Christopher J. Leavitt
State Bar No. 24053318
Fed. ID No. 1045581
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Phone: (713) 223-5393
Facsimile: (713) 223-5909
Email: CLeavitt@txattorneys.com

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of this document has been duly served on all interested parties in accordance with the Federal Rules of Civil Procedure on the **June 1, 2018**.


          */s/ Christopher J. Leavitt*
          Christopher J. Leavitt