UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
**ENTERED**
May 14, 2020
David J. Bradley, Clerk

| | | |
|---|---|---|
| Kao Lee Yang, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-18-0161 |
| | § | |
| Cheramie Marine, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.   *Introduction.*

Lightering LLC, hired two temporary workers through a staffing contract with Express Services, Inc. They were killed by a collapsing crane as they were loading a vessel at the Galveston Channel. Their families separately sued all companies involved. The cases were removed and consolidated. Lightering moved for a summary judgment that the Longshore and Harbor Workers' Compensation Act applies. It will prevail.

2.   *Background.*

Cheramie Marine, LLC, owns offshore support vessels. Teichman Group is an international marine services company. It operates oil-field services in Galveston, Texas, through its subsidiary, T&T Offshore Inc. Lightering LLC, manages maritime logistics for oil and gas operators. Express Services, Inc., is a staffing agency.

In 2010, Lightering agreed with T&T for dockside, wharf and storage, and other services. In 2017, T&T used its crane and its operator to load the cargo on Cheramie's ship, the *Elliott Cheramie*. The project was manned by both Lightering employees and personnel who Lightering hired through a staffing agreement with Express. Blake Carlisle and Tai Chi Vong were among the people hired through that agreement.

On September 20, 2017, Carlisle and Vong were killed when the boom of T&T's crane fell on them. Kao Lee Yang is the surviving spouse of decedent-Vong, and

Marcus Wilson is the father of decedent-Carlisle. They filed parallel cases against Teichman, T&T, and Express for wrongful death in state court.

In October 2017, all claims against Teichman and T&T were settled. Lightering and Cheramie were added as defendants and removed the disputes to federal court. After the cases were consolidated, Cheramie and Express were dismissed, without prejudice. Now, the only claim is against Lightering for wrongful death.

3.      *Wrongful Death.*

Vong and Carlisle are covered by the Longshore and Harbor Workers' Compensation Act.[1] For that reason, Yang cannot seek recovery under state law.

The LHWCA applies if an employee is injured while engaged in maritime employment on the navigable waters of the United States.[2] Here, the LHWCA applies because Vong and Carlisle were killed while loading cargo on a vessel docked at Pelican Island in Galveston, Texas.

Under the LHWCA, an employee's recovery against his employer is exclusive.[3] "Employer" includes general employers and companies who borrow employees from them.[4] Lightering says that it was a borrowing-employer because it hired Vong and Carlisle through a staffing agreement with Express. Lightering is correct.

Under the "borrowed servant doctrine," courts consider nine factors to determine whether someone is a borrowed employee rather than an independent contractor. No single factor is dispositive, instead the court considers them all and weighs them accordingly.[5] The nine factors are:

    (1)    Who controlled the employee and his work, beyond mere suggestion of details or cooperation;

    (2)    Whose work was being done;

---

[1] 33 U.S.C. § 901.

[2] *Anaya v. Traylor Brothers, Inc.,* 478 F.3d 251, 254 (5th Cir. 2007).

[3] 33 U.S.C. § 905(a).

[4] *Lemaire v. Danos & Curole Marine Contractors Inc.,* WL 872840 *2 (5th Cir. 2001).

[5] *Mays v. Director, Office of Workers' Compensation Programs,* 938 F.3d 637, 642 (5th Cir. 2019).

(3)     Whether there was an agreement between the original and the borrowing employer;

(4)     Whether the employee agreed to being borrowed;

(5)     Whether the original employer terminated its relationship with the employee;

(6)     Who furnished the tools and place for work;

(7)     Whether the new employment was over a considerable length of time;

(8)     Who had the right to discharge the worker; and

(9)     Who was obliged to pay the worker.

4.     *First Factor.*

Lightering controlled Vong and Carlisle. Control is the most weighty factor in a borrowed-servant analysis.[6] At law, control is broad authoritative direction rather than mere suggestion about details or cooperation, where the work is part of a larger undertaking.[7]

Yang says that the court should assess Lightering's control over Vong and Carlisle separately because they were employed for different lengths of time. She says that Lightering did not control Vong because the accident occurred only two days into his employment and that during that time he was supervised by the T&T crane operator.

Yang errs for three reasons. First, the difference in the duration of Vong and Carlisle's employment is irrelevant. They were both hired through the same staffing agreement between Lightering and Express. Second, Vong's losing his life only two days on the job does not negate that he was hired by Lightering – not T&T. The monitoring and direction given to Vong by T&T's operator was a function of them both having a contract with Lightering to do some loading at T&T's dock. This is mere coordination, not control. T&T had no authority over the duration of Vong's employment or which projects he was assigned. If Vong worked alongside the T&T operator for the two days preceding his death it was because Lightering told him to. He reported to and served at

---

[6] *Id.*

[7] *Standard Oil Co. v. Anderson,* 212 U.S. 215, 222 (1909).

the direction of Lightering – not T&T.  Third, the staffing agreement says expressly that Lightering had control over Vong and Carlisle's work. The first factor weighs in Lightering's favor.

5.    *Second Factor.*

Vong and Carlisle were performing Lightering's work. Yang says that the work belonged to T&T because it supplied the crane and the crane's operator. Moreover, she says that under the services agreement with Lightering, T&T was assigned to, responsible for, and independently paid for that work.

First, the question is whether a borrowed-servant relationship existed between Lightering and the decedents by virtue of the latter working for the former. That T&T is under a separate contract with Lightering has no bearing on whether Vong and Carlisle were employed by Lightering to work on its behalf.

Second, in determining whether a person is borrowed there must be a borrowing and a lending employer. No privity existed between the decedents and T&T nor between T&T and Express. So, T&T could not have been a borrowing nor a lending employer of Vong and Carlisle. T&T might well believe that it was an independent contractor with respect to Lightering, but that is a separate question from whether the decedents were the borrowed servants of Lightering. The second factor weighs in Lightering's favor.

6.    *Third Factor.*

It is neutral whether there was an agreement between Express and Lightering that Vong and Carlisle would be borrowed servants. When determining whether there is an agreement, the court considers the language of the contract and looks at other evidence such as the parties' acts.[8]

The language of the staffing agreement presents a mixed picture. On one hand, it does not explicitly say that Express associates will be the borrowed servants of Lightering. Furthermore, under the agreement, Express remains responsible for managing the employees' wages, taxes, and insurance. On the other hand, the

---

[8] *Brown v. Union Oil Co. of California*, 984 F.2d 674, 678 (5th Cir. 1993).

agreement does not try to prohibit borrowed-servant status either. It says that Lightering will:

> "supervise, direct, and control the work performed by Express associates, and assume responsibility for all operational results, including losses or damage to property or data in the care custody, or control of an Express associate."

Last, the parties' behavior at all levels was unremarkable, being typical of temporary staffing agreements. Neither party is the victor of the third factor.

7.     *Fourth Factor.*

Vong and Carlisle appreciated their statuses. Express is a staffing agency that sends their associates to work for other companies like Lightering. As Express associates, Vong and Carlisle were assigned to Lightering and reported to it for work at the T&T dock without objection. They had done this line of work before and nothing suggests that they were confused about the arrangement or its implications. Clearly, they agreed to these conditions. After all, being rented for labor as needed was what they did for a living. Accordingly, the fourth factor weighs in Lightering's favor.

8.     *Fifth Factor.*

Express temporarily terminated its relationship with Vong and Carlisle. Termination occurs even if Express assigned them to work for Lightering without completely severing its relationship with them.[9]

Under the staffing agreement, Express and Lightering divided the responsibility for Vong and Carlisle's work. Express only retained contact with them for managing their payroll and insurance. They were assigned, instructed, and supervised as Lightering saw fit. Lightering also had the option to hire the workers at the conclusion of the project. Otherwise, they would resume their positions as Express associates. The fifth factor weighs in Lightering's favor.

---

[9] *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

9.    *Sixth Factor.*

Lightering supplied Vong and Carlisle the place of performance and their tools. Lightering asserts, without contradiction, that it supplied the tools, equipment, and personal protective gear that Vong and Carlisle needed while working. Yang says that T&T supplied the tools for performance because it owned the crane and employed the operator used in loading the vessel.

Yang's argument fails because, in asking who provided the tools, the real question is whether it was Lightering or *Express*. T&T had a services agreement with Lightering to unload the vessels in which Lightering paid T&T for its machinery and its operator. Lightering also had a separate staffing agreement with Express for manpower – Vong and Carlisle. Essentially, Lightering supplied the tools needed for the work because it made the arrangements necessary to implement its project. In other words, Lightering did not rely on Express for the crane, it used its own capital to transact with T&T for the needed machinery. The sixth factor weighs in Lightering's favor.

10.   *Seventh Factor.*

Vong and Carlisle's employment with Lightering was not over a considerable length of time. The seventh factor is neutral when the duration of employment is brief.[10] Neither party disputes that Carlisle and Vong worked for Lightering for two weeks and two days respectively. Of course, the duration of their employment was interrupted by the accident. The seventh factor favors neither party.

11.   *Eighth Factor.*

Lightering had the right to discharge Vong and Carlisle. The question is whether Lightering could end its relationship with Vong and Carlisle at will. The staffing agreement expressly states that if Lightering was unhappy with an Express associate's performance, then it could notify Express of its dissatisfaction and have them replaced. The eighth factor weighs in Lightering's favor.

---

[10] *Id.* at 618.

12.    *Ninth Factor.*

Lightering had the obligation to pay Vong and Carlisle. This factor can be supported if a borrowing employer pays a worker directly or by furnishing the lending employer the funds from which the worker is paid.[11] Lightering paid Express a monthly charge, but it also submitted time stamps showing the hours logged by Vong and Carlisle. Express paid Vong and Carlisle after verifying the log it received from Lightering. The ninth factor weighs in Lightering's favor.

13.    *Conclusion.*

Tai Chi Vong and Blake Carlisle suffered a fatal accident while loading a vessel at the facility of T&T Offshore Inc., at the Galveston Channel. The staffing agreement between Lightering LLC, and Express Services, Inc., establishes that Vong and Carlisle were Lightering's borrowed servants. Accordingly, the Longshore and Harbor Workers' Compensation Act preempts Kao Lee Yang and Marcus Wilson's claims against Lightering for wrongful death. Lightering LLC, will prevail on its motion for summary judgment.

Signed on May 14, 2020, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge

---

[11] *See Melancon v. Amoco Productions Co.*, 834 F.2d 1238, 1246 (5th Cir. 1988); *Capps*, 784 F.2d at 618.